MINNIE HARDY, Appellant, v. ELIZABETH DAUM et al., Appellees, J. H. HARDY, Defendant, Appellant.

No. 42824.

MARCH 12, 1935.

REHEARING DENIED JUNE 21, 1935.

Geo. R. Ludeman, for appellants.

Senneff, Bliss & Senneff, for appellees.

KINTZINGER, J.—Appellant alleges that she is the owner of an undivided three-sixths; that her husband, J. H. Hardy, is the owner of an undivided one-sixth; and that the defendant is the owner of an undivided two-sixths, of the real estate in question. Appellee contends that the Hardys own four-ninths of the property and Mrs. Daum five-ninths, subject to a lien in favor of the Hardys for two-thirds of the $3,500 advanced by them to purchase an outstanding one-third interest in the property.

Prior to 1932 the farm belonged, in equal shares, to the plaintiff, Minnie Hardy, to her sister, the defendant, Elizabeth Daum, and to Herman J. Doderer, their brother. Mr. Doderer's interest was sold in foreclosure proceedings to Bella and Ruth Doderer in July, 1932. At that time Mr. Doderer also owed Minnie Hardy, appellant, about $3,000, and Elizabeth Daum, appellee, about $6,000.

Before the expiration of the redemption period, Mr. Daum, in behalf of his wife and the appellants Mr. and Mrs. Hardy, entered into negotiations with Mr. Doderer for the purpose of securing his one-third interest in said property at the lowest price possible, in order to recoup their loss on the personal indebtedness of Mr. Doderer to his sisters, by a probable future increase in land values. Mr. Doderer told them that unless they purchased the interest of Ruth and Bella Doderer, that he would file an application for an extension under the Moratorium Act.

As a result of the negotiations, the Doderers offered to sell their one-third interest for $3,500. This was less than the sisters considered the property worth, and it was purchased for that amount. When the negotiations were pending it was mutually understood between the Daums and the Hardys that Mrs. Daum had no cash to make an immediate payment for a share of the Doderer interest. Appellees claim that it was then orally understood and agreed that the Hardys furnish all the money to purchase the Doderer interest; that Mrs. Daum should have two-thirds of that interest, and Mrs. Hardy one-third, because Mr. Doderer was indebted to them in such proportionate amounts, and that Mrs. Daum repay the Hardys two-thirds of the purchase price within five years at 6 per cent interest. Appellee contends that it was orally agreed between them that Mrs. Daum make a partial payment of $500 on her share by March 1, 1934; that pursuant to the oral agreement the

Hardys paid Bella and Ruth Doderer for their interest in said property and received a deed therefor.

It is undisputed that the Hardys and the Daums had conferences for the very purpose of securing the one-third interest formerly held by their brother, to recoup them, in part, from any losses they might sustain because of his indebtedness to them. Mr. Doderer was losing his one-third interest in this farm, and he made the proposal that the two sisters take over his one-third interest, from the holders of the sheriff's certificate of sale, in such a manner that Mrs. Daum have two-thirds and Mrs. Hardy one-third of his former interest. The evidence tends to show that the whole transaction was initiated for the purpose of saving Mrs. Daum and Mrs. Hardy from an entire loss on the debts due them by their brother.

Appellee claims that it was orally agreed between them that the Hardys furnish the money; that the deed be executed to the Hardys; and, that Mrs. Daum have five years from July 15, 1933, in which to repay the two-thirds of the purchase price advanced for her.

The negotiations with Mr. Doderer were conducted by Mr. Daum, the husband of Elizabeth Daum, at considerable expense, in time and money. Pursuant to the negotiations, a conveyance of the interest of Mr. Doderer and the purchasers of the sheriff's certificate was executed to Minnie Hardy and her husband, J. H. Hardy, for the consideration of $3,500. Appellee contends that the Hardys are holding this deed as security for that portion of the purchase price they advanced for Mrs. Daum, or, two-thirds of the $3,500. The evidence shows that after this deed had been executed Mrs. Daum returned Doderer's note, representing his indebtedness to her, marked "cancelled". Thereafter, Mr. Doderer supplied some labor and materials on the farm and received five-ninths of the payment therefor from Mrs. Daum, and made a request for the other four-ninths from the Hardys, who admitted owing him that amount.

Much evidence was introduced, and the abstract filed is simply a copy of the transcript. We are not disposed, and it is not deemed necessary, to set out the testimony in detail. There is an apparently hopeless conflict in some of the testimony between the parties. A careful analysis of all the testimony, both oral and written, convinces this court that the evidence offered on the part of appellee is sufficiently supplemented by the admissions of appellants, the ad-

verse parties, and by their written letters and statements, to establish the agreement as contended by appellee.

There was much oral evidence offered on behalf of appellee to establish the oral agreement as contended for by her. In support of the evidence, to sustain the oral agreement, she offered in evidence a check signed by Mrs. Daum for $57.78, dated July 28, 1934, indorsed: "Taxes on 5/9ths Bath farm." The check was payable to the county treasurer, but sent to the Hardys, who paid it to the county treasurer for five-ninths of the taxes due at that time. She also introduced in evidence a written report, signed by J. H. Hardy who was then acting as agent for his wife, in which appeared an expense item of $2 which Mrs. Daum paid for recording the deeds from the Doderers. This report also shows the payment of five-ninths of the taxes by Mrs. Daum and four-ninths of the taxes by Mrs. Hardy. Appellee also offered in evidence a letter written to her husband for Mrs. Hardy, in which it is stated:

"Last corn loan received some time ago. I am sending check of $150 for Elizabeth. *Balance of $285.31 will be held for interest.* * * *. (Italics ours.)

"You may be planning to make March 1st payment on the note to Bella. I paid her the balance due on the note last November. We had thought it better if we continued to carry the $3,500 trust fund at 6% interest rate as we have it arranged now. * * *

"[Signed]   J. H. Hardy."

The evidence tends to show that the Hardys first gave their note in payment for the land, and later took it up.

Appellee also offered a written report made by the Hardys showing the cash balance of $285.31 referred to in the foregoing letter. The following letter, written to Mr. Hardy by Mr. Daum, was also offered in evidence.

"I think the agreement was that you was to keep the money for 2/3rds of the share bought of Bella to apply on the $2,333.34 you advanced for Elizabeth (Mrs. Daum). If you will figure up the interest due you to March 1st, 1934, she will send you check for this, *and the money you have on hand may as well be applied on principal,* as there is still oats to sell and taxes are not due until October * * *.

"[Signed]   J. D. Daum."

Mr. Hardy admits he received this letter, but never answered it. He also admitted, on the witness stand, that the balance of $285.31 would be held for interest that might be due him *when the Daums took over their share of the place.*

Mrs. Hardy also testified:

"I wrote them (the Daums) on the 26th of February saying it wouldn't be necessary for them to pay the $500, *and that we would carry it in this trust fund.*"

She also testified she never made a demand upon them to pay it.

Both Mr. and Mrs. Hardy freely admit having had conferences with Mr. and Mrs. Daum in reference to the purchase of the Doderer one-third interest in the farm. They also admit discussing the nature of a division of the brother's interest if purchased. They also admit the conversations in reference to their brother's indebtedness to them in the amounts hereinabove stated. They also admit they were to furnish the purchase price, and that as soon as Mrs. Daum repaid them two-thirds of such purchase price, a two-thirds interest of the brother's one-third would be conveyed to her. They also admit that the $3,500 paid for the brother's interest was considered by them a trust fund, and that Mrs. Daum was to pay interest upon two-thirds of the $3,500 at 6 per cent until paid. While they do not admit that any particular time was mentioned within which Mrs. Daum was to repay her part of the purchase money, the evidence clearly shows that such payment was to be made at any time within five years. The evidence also clearly shows that the purchase of the brother's interest was made for the purpose of holding the property for an advance in price so as to enable the Hardys and the Daums to recoup part of the loss they might sustain by reason of the brother's indebtedness to them.

In addition to the evidence of the adverse parties, and the written statements and letters written by them, the oral testimony on behalf of appellee clearly shows that the agreement contended for by her, was, in fact, entered into. Notwithstanding certain denials made by appellant, we are constrained to hold that the evidence on behalf of appellee clearly establishes her ownership of an equitable two thirds interest in the property purchased from the Doderers. This also shows a partial performance of the contract.

Appellant contends that the court erred in entering a decree in favor of appellee because a trust cannot be impressed upon real

estate by parol evidence (section 10049, Code 1931), and because no such evidence creating an interest in real property is competent under the statute of frauds (section 11285, Code 1931).

█ The rule of law that an express trust in real estate cannot be established by parol is so well established in this state that a citation of authorities thereon is unnecessary. It is also the settled rule of law in this state that parol evidence is competent to impress an express trust upon an absolute deed, provided the trust has been wholly or partially executed. Ratigan v. Ratigan, 181 Iowa 860, 162 N. W. 580, 165 N. W. 85; Hayes v. Dean, 182 Iowa 619, 164 N. W. 770; Nolan v. Guggerty, Admrx., 187 Iowa 980, 174 N. W. 706; Kelley, Admr. v. Kelley, 189 Iowa 311, 177 N. W. 45; Neilly v. Hennessey, 208 Iowa 1338, 220 N. W. 47; Johnston v. Jickling, 141 Iowa 444, 119 N. W. 746; Morris Furn. Co. v. Braverman, 210 Iowa 946, 230 N. W. 356; Schurz v. Schurz, 153 Iowa 187, 128 N. W. 944, 133 N. W. 683; McCormick Harv. Machine Co. v. Griffin, 116 Iowa 397, 90 N. W. 84.

█ Likewise, parol evidence may be introduced to establish an oral agreement for the creation of an interest in real estate where the purchase money or any portion thereof has been received by the vendor (Code, section 11286), or where it is established by the oral evidence of the adverse party (Code, section 11288).

A number of cases are cited by both parties to sustain their contentions on the law. In view of our prior pronouncements in such cases, we deem it unnecessary to review them at length. In reference to these rules it may be stated that most of the testimony offered by appellee to establish an interest in the real estate was received in evidence without objection on the part of the appellant. In addition to appellee's evidence of the nature of the contract, there is the oral admission of appellants and the written evidence of the letters and statements hereinabove referred to. The testimony also clearly shows that appellants received $285.31 as a partial payment upon the amount due the Hardys from Mrs. Daum toward the payment of the indebtedness incurred with the Hardys in advancing, for her, two-thirds of the $3,500 paid for the Doderer one-third interest in the property in question. It is therefore clear that under the evidence of partial payment alone, the rules forbidding parol evidence do not apply.

The lower court found that appellee was the equitable owner of a five-ninths interest in the real estate, subject to a lien against

her interest for the balance due the Hardys for purchase money advanced by them for Mrs. Daum, and that the property was to be held for five years, if necessary, to enable Mrs. Daum to pay the balance due on her share of the purchase price.

For the reasons hereinabove stated we are constrained to hold that the lower court was right and the judgment and decree is therefore affirmed.—Affirmed.

ANDERSON, C. J., and MITCHELL, POWERS, HAMILTON, ALBERT, and RICHARDS, JJ., concur.